UNITED STATES of America,

v.

Lloyd PROBBER, a/k/a "Larry Phillips", Defendant.

No. 90 Cr. 301 (RPP).

United States District Court, S.D. New York.

Dec. 19, 1990.

Otto Obermaier, U.S. Atty., Southern District of New York, New York City, for the U.S.

Martin J.E. Bowers, Lake Success, N.Y., for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendant Lloyd Probber moves this Court for an order dismissing the indictment under the "Fruits of the Poisonous Tree" doctrine because the search warrant issued on December 14, 1989 by Magistrate Buchwald was based on alleged misrepresentations made with the intention of deceiving said Magistrate, contained in an affidavit by Special Agent James J. Rossini dated December 14, 1989 (the "Rossini Affidavit").

The Rossini Affidavit detailed how the defendant operated a business by which at least a few hundred thousand dollars of advance fees were collected from customers of The Funding Assistance Corporation ("FAC"), of which defendant was owner and/or Managing Director, or of the Financial Guaranty Corporation, a predecessor business of defendant, on the promise future loan guarantees would be provided from one of the top 100 banks in the United States. The Rossini Affidavit recounts the experience of nine customers who were unable to obtain loan guarantees from banks after payment of the advance fees; it also recounts an interview with a former employee who informed the FBI that fellow employees had confirmed to her that in the past year not a single loan guarantee had ever been provided to customers by defendant's business; the Rossini Affidavit then reveals that an undercover agent had applied for a loan guarantee from FAC and had confirmed the nature of its operations and obtained copies of its standard documentation. The Rossini Affidavit also states interviews with various commercial bank officials were conducted and that they examined the standard documentation provided to customers by defendant and his business and pronounced it useless. The standard documentation contained a commitment to obtain an unnamed guarantor to provide a guarantee whose terms were not stated, conditional upon the borrower

presenting a confirmation of availability of funds with full bank responsibility from the lender. Based on the Rossini Affidavit, the search warrant and an arrest warrant were issued, and the business premises were searched that same day. The search revealed the names of 100–200 customers who had paid fees of $5,000 to $100,000 to defendant's business, and only two had ever obtained the promised loan guarantees.

Defendant was indicted on May 17, 1990 on ten counts of mail fraud arising out of the scheme, one count for violation of 18 U.S.C. § 1001, making false statements to his probation officer in an effort to conceal his business operations, and three counts of making false statements to banks in applying for credit cards under a false name in violation of 18 U.S.C. § 1014.

Although defendant's motion to dismiss was untimely filed, the Court will consider it. It is supported by affidavits of defendant and his attorney.

The essence of defendant's supporting affidavit is that the Rossini Affidavit contains the following intentionally misleading claims, which the Court will discuss seriatim.

1. Defendant alleges that the Rossini Affidavit states that the FBI investigation has not uncovered a single individual who was able to find a willing lender on the strength of Probber's conditional commitment letter, whereas FBI 302 obtained by Probber's attorney pursuant to Rule 16 of the Fed.R.Crim.P., shows Probber stated he had provided two insurance company guarantees to individuals from the Travellers Insurance.

Probber's statement that he had provided two insurance company guarantees occurred after the search, pursuant to the warrant and after defendant's arrest (Rossini Opposing Affidavit dated November 30, 1990 ("Rossini Opposing Affidavit")). The allegation, therefore, does not support the motion.

2. Defendant alleges that Rossini failed to confirm adequately the veracity of customer L.D. Harper's allegation that he had been defrauded of a $25,000 advance fee.

This allegation is not evidence of misrepresentation in connection with the issuance of the search warrant.

3. Defendant alleges that the Rossini Affidavit states that a $50,000 advance fee was paid to defendant by Donald R. Citron and Ronald Levine, whereas investigation by Rossini would have revealed that a broker received half that fee and that Citron and Levine did not consider themselves victims. A similar claim is made with respect to a $50,000 advance fee received by defendant from David Alexander.

These allegations are not evidence of misrepresentations in connection with the issuance of the search warrant.

4. Defendant alleges that the Rossini Affidavit states that Elliot Moore was a victim, whereas defendant met with Moore on January 10, 1990 at a videotaped meeting at defendant's office at which Moore stated he had not spoken with the FBI. The supporting affidavit of Probber's attorney confirms that the meeting with Mr. Moore on January 10, 1990 was videotaped and that Mr. Moore stated that he did not consider himself a victim and that he had not spoken to the FBI.

The fact that such an event occurred after the search warrant was issued is of no relevance. Furthermore, such allegations in order to be evidence of misrepresentations should be supported by an affidavit of Mr. Moore himself.

5. Lastly, the defendant claims that the Rossini Affidavit's recital of his criminal history of two prior federal convictions for fraud and conviction for several other felonies and that the Affidavit's conclusionary description of defendant as a longtime confidence man was meant to incite and inflame, and to deceive the Magistrate. Magistrate Buchwald, who issued the search warrant, is an experienced attorney and a talented magistrate judge, who would not be so affected.

Mr. Rossini, in an answering affidavit, points out that the Rossini Affidavit stated

the investigation showed that no customers had been able to obtain the promised guarantees from banks, although he acknowledges that, after the search warrant was executed, the FBI ascertained that two customers had obtained guarantees not from banks but in the form of annuities from an insurance company. He also reasserts that before the search he was not aware of a single one of Probber's hundreds of customers who had actually received what had been promised.

In short, the defendant's allegations wholly fail to justify suppression pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), or a hearing, *U.S. v. Levasseur*, 816 F.2d 37, 44 (2nd Cir.1987); *U.S. v. Figueroa*, 750 F.2d 232, 237 (2d Cir.1984).

■ Defendant's attorney makes the claim that the indictment should also be dismissed because the FBI has been unable to locate a tape recording of a conversation between the undercover agent and one of defendant's employees (not with Probber himself). The substance of that conversation is contained in paragraphs 28–30 of the Rossini affidavit. There is nothing exculpatory contained in those paragraphs and no showing of bad faith has been made. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

The defendant's motion to dismiss the indictment is denied.

A trial conference will be held at the United States Courthouse on Wednesday, January 2, 1991, at 9:00 a.m.

IT IS SO ORDERED.